UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | 03 CR 10400 JLT |
| ) | VIOLATION: |
| v. ) | 18 U.S.C. § 1001 |
| ) | (FALSE STATEMENTS) |
| ) | |
| JIE LING CHO, ) | |
| ) | |
| Defendant. ) | |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### INTRODUCTION

At times pertinent to the Information:

1. JIE LING CHO ("CHO") was a resident of Massachusetts.

2. Equiserve, Inc. was a Delaware corporation with its principal place of business in Canton, Massachusetts.

3. KAM WAI CHUI ("CHUI") was employed as a "Processing Associate" at Equiserve's Canton facility.

### OVERVIEW OF THE SCHEME

4. CHUI engaged in an elaborate scheme to defraud shareholders of corporate stock held in accounts at Equiserve, whereby he diverted stock from legitimate accounts into phony accounts of his own creation, ordered the sale of the stock, and directed the proceeds of the sales to addresses controlled by CHO, his girlfriend at the time, including a post office box she established under a pseudonym and a false address.

*Equiserve's Business*

5.  Equiserve was in the stock transfer business, in which publicly traded corporations retain a company like Equiserve to perform electronic transfers of their stock. One of the principal benefits of this service is that it enables a corporation and its shareholders to trade stock without the inconvenient and costly task of redeeming paper stock certificates.

6.  Equiserve also offered a related service to shareholders of its corporate clients whereby it allowed them to hold shares in personnally-directed accounts. Account holders could buy or sell shares by instructing Equiserve either by phone or mail, or on its website. Account holders would pay Equiserve a nominal fee for each transaction. Unlike a traditional stock broker, however, Equiserve did not provide the shareholders with investment advice.

7.  When Equiserve received a sell order from an account holder, it would sell the shares at prevailing market prices and, unless otherwise instructed, automatically would send a check of the proceeds by mail to the account holder's address of record.

8.  Equiserve's practice was not to send a record of the transaction to the account holder.

*Chui's Role at Equiserve*

9.  CHUI was employed at Equiserve as a "Processing Associate" in the "Transfer Operations Department" at Equiserve's Canton, Massachusetts facility.

10. When an account holder placed a stock transfer order with Equiserve, the order would be conveyed to the Transfer Operations Department, where Processing Associates like CHUI would enter the transaction information into Equiserve's computer system, which in turn would execute the transaction.

11. Processing Associates gained access to individual accounts by entering a unique user name assigned by Equiserve and a password known only to the user.

### Chui's Scheme to Siphon Shares from Equiserve Accounts

12. Beginning in approximately June 2001, using his unique username and password to gain access to Equiserve's system, CHUI opened numerous phony shareholder accounts. The accounts bore the names of persons who had not authorized their opening, as well as social security numbers that either did not match the names or did not exist at all.

13. The addresses CHUI listed on these accounts were addresses controlled by CHO, including CHO's home address in Quincy, Massachusetts. In addition, on October 9, 2002, CHO submitted an application to the Post Office in Allston, zip code 02134, to open a Post Office Box, on which she listed her name as "Linda Cho" and her address as "57 Ashford Street, Allston, Massachusetts," knowing that address to be false. CHUI listed this address on some of the phony accounts.

14. Using his username and password to gain access to Equiserve's system, CHUI directed the system on numerous occasions to divert stock from established shareholder accounts into the phony accounts he had created, knowing that he did not have the authorization of the account holders themselves.

15. The dollar value of the stock transfers ranged from the hundreds to the tens-of-thousands of dollars.

16. Once transferred, the stock would reside in the phony account for as long as a few months or as little as a day. In either case, CHUI often would transfer stock among several phony accounts in an effort to make his transactions more difficult to trace.

17. CHUI ultimately transferred most of the shares into phony accounts that bore the nearly identical names "Daniel Chang," "Daniel Chong," or "Daniel Zhang." No one by any of these names had opened an account at Equiserve.

18. CHUI then would contact Equiserve either by phone, mail or internet, purporting to be "Daniel Chang," "Daniel Chong," or "Daniel Zhang," as the case may have been, and would order the sale of shares from the account.

19. Once Equiserve sold the shares, it would send the proceeds by check to the address of record on the account; that is, addresses that CHO controlled, including the post office box she had opened in Allston.

20. CHUI knew that because banks require proof of identification for certain transactions, including cashing checks, withdrawing cash and opening new accounts, he would not be able simply to cash the Equiserve checks. To evade the proof-of-identification requirement, CHUI sought out and obtained the assistance of Tony Cho, the brother of Jie Ling Cho and an employee of Citizens Bank, to open up an account at Citizens Bank in the name of Daniel Chang. Establishing the account allowed CHUI to deposit the Equiserve checks (as deposits do not require proof of identification) and to write checks off the account.

21. On approximately August 27, 2001, at CHUI's request and on his behalf, Tony Cho in fact opened savings and checking accounts at Citizens Bank in West Roxbury, Massachusetts in the name of Daniel Chang. The address of record on the accounts was 261 West Street, # 2, Boston, Massachusetts 02169, a variant of the address where Jie Ling Cho and he lived, namely *263* West Street, *Quincy*, Massachusetts 02169. Chui entered Boston as the city on the address and entered a slightly different street number as a way of making his transactions less traceable, knowing that with the correct zip code (and because 261 West Street did not

4

exist), the U.S. Postal Service would deliver any mail concerning the Daniel Chang accounts to the Quincy address.

22.  At CHUI's request, Jie Ling Cho would retrieve the checks mailed to the address to which she had access and deliver them to CHUI, who in turn would deposit it into the Daniel Chang accounts at Citizens Bank.

23.  Once the checks from Equiserve were credited to the Daniel Chang bank accounts, CHUI would withdraw the funds by check or, with the further assistance of Tony Cho, by cash.

## COUNT ONE
### False Statements (18 U.S.C. § 1001)

24.  Paragraphs 1-23 are realleged and incorporated by reference as though fully set forth herein.

25.  On or about October 9, 2002, in the District of Massachusetts,

### JIE LING CHO

the defendant herein, in a matter within the executive branch of the Government of United States, did knowingly and willfully make a materially false statement; to wit, on an application for a post office box, which she submitted to the U.S. Postal Service in Allston, Massachusetts 02134, she listed her address as "57 Ashford Street, Allston, Massachusetts," knowing that address to be false.

All in violation of Title 18, United States Code, Section 1001.

Date: December 17, 2003

MICHAEL J. SULLIVAN
United States Attorney

JONATHAN MITCHELL
Assistant U.S. Attorney

5