UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Case No. 03-10400-JLT |
| | ) | |
| JIE LING CHO | ) | |

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant Jie Ling Cho (Cho), submits this Memorandum to aid the Court in sentencing her, inter alia, in light of *United States v. Booker*, 543 U.S. ___, 2005 WL 50108 (Jan.12, 2005). Nothing herein is intended to excuse her conduct, but rather to place it in context and to arrive at a just and fair sentence.

### STATEMENT OF FACTS

The Defendant's family history is summarized in the Pre-Sentence Report and will be mentioned to the extent necessary to give perspective. On February 19, 2004, Mrs. Jie Ling Cho (Cho), waived indictment and pled guilty to a one-count Information charging False Statements under 18 U.S.C. §1001 in relation to using false information to open a post office box which was used to receive checks. She was involved in a fraudulent scheme with co-defendants father of her child Kam Wai Chui (Chiu), brother Jing Cho (Tony Cho) and Nai Jing Luo (Luo) which basically cashed out stock from Chui's company, Equiserve, by creating fictitious accounts, sending checks to different addresses, and then depositing and cashing these checks with the assistance of Tony Cho, a manager at Citizen's Bank. PSR at ¶ 6-12. Cho's role in this scheme was basically to simply use the false address to open a post office box in her name. Checks were mailed

to the box and to her home address where she lived with the leader and organizer of this scheme Chui. These checks were then collected by Chui and deposited in a bank account by him. Cho was pregnant by Chiu at this time. She actually went to the post office box only on two occasions, as Chui had a key to the post office box and would generally collect the mail himself. Cho would work during the day at her regular job, so Chui would routinely collect those checks mailed to the home as well. *See* PSR at ¶ 6-12. Cho later entered into a Proffer Agreement whereby she agreed to provide truthful information to the Government, which she did on several occasions prior to her change of plea. Despite Cho's cooperation, the Government has determined not to file a Motion for Downward Departure based upon Substantial Assistance per USSG § 5K 1.1.

      Cho maintains, for reasons enumerated below, that the Court should sentence her to a term of supervised probation, and/or home confinement, the equivalent of a downward departure of five (5) levels, placing her at a total level 8, Criminal History Category I. She should receive this alternative sentence based on the following mitigating factors, as set forth under 18 U.S.C. §3553(a):

      1. The enumerated loss attributable to Cho overstates Cho's culpability in light of her minor role in the offense and lack of financial benefit therefrom;

      2. Cho cooperated with the Government from the outset and was denied the ability to effectively cooperate and obtain a substantial assistance departure for reasons outside of her control.

      3. "Tony" Cho, a co-defendant who was similarly situated and arguably played a larger role in the scheme received a two-year probationary sentence, from the Court, Zobel, J.;

4. The historical circumstances of Cho's life suggest that a non-incarceration sentence is appropriate;

5. A term of imprisonment would cause a substantial hardship to Cho's 20 month old son, Jayden Cho, for whom she is the sole provider.

_____

**APPROPRIATE SENTENCING PROCEDURE IN LIGHT OF *UNITED STATES v. BOOKER*, 543 U.S. _____, 2005 WL 50108 (Jan.12, 2005)**

The Supreme Court recently held that the United States Sentencing Guidelines provisions concerning factfinding and sentencing violated the Sixth Amendment to the United States Constitution. *United States v. Booker,* supra. In the Court's "remedy" opinion, it held that "the provision of the federal sentencing statute that makes the Guidelines mandatory [is] incompatible with today's constitutional holding" and therefore "must be severed and excised…" The Court concluded that:

> So modified, the federal Sentencing Act…makes the Guidelines effectively advisory. It requires a sentencing court to *consider* Guidelines ranges, *See* 18 U.S.C. § 3553(a)(4)(sup. 2004), but permits the court to tailor the sentence in light of other statutory concerns as well, *See* 3553(a)(sup. 2004).

*Id.* at *16 (emphasis added). The touchstone, under the new sentencing regime, is 18 U.S.C. § 3553(a), which set forth a number of factors courts must consider when imposing sentence. The Guidelines, like the rest of those factors, is only one piece in the sentencing puzzle. As *Booker* held, "[w]ithout the 'mandatory' provision, the Act nonetheless requires judges to take account of the Guidelines together with sentencing goals. *Id.* at *24, citing 18 U.S.C. § 3553(a). "The district courts, while not bound to

3

apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id.* at *27. As the Court observed:

> These features of the remaining system, while not the system Congress enacted, nonetheless continue to move sentencing in Congress' preferred direction, helping avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.

*Id.* As noted, in the new sentencing regime, 18 U.S.C. § 3553(a) sets out the factors that a Court must consider in imposing sentence. 18 U.S.C. § 3553(a) provides, as applicable:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
> 
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> 
> (2) the need for the sentence imposed –
> 
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> 
>     (B) to afford adequate deterrence to criminal conduct;
> 
>     (C) to protect the public from further crimes of the defendant; and
> 
>     (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> 
> (3) the kinds of sentences available;
> 
> (4) the kinds of sentence and sentencing range established for –
> 
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines – (i) issued by the Sentencing Commission…
> 
> (5) any pertinent policy statement –
> 
>     (A) issued by the Sentencing Commission…[and]
> 
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

4

### A. In Determining Cho's Sentence, the Court Should Give Less Weight to the Amount of Loss Under the Current Advisory System

Cho's exposure to prison here is almost entirely a function of the "Loss Table" under U.S.S.G. §2B1.1. Cho's base offense level is 6. As stated above, Cho's relevant conduct is receiving checks from the scheme at addresses in her name including a post office box opened under a false name. She would then deliver these checks to Chui, her boyfriend at the time and father of her child. She was not involved in cashing or depositing these checks. The single False Statement Count she plead to is related to her involvement in opening the post office box. The total amount of checks received at the addresses was $151,530. *See* PSR at ¶ 9-12. The government seeks, based on this "relevant conduct" and the "Loss Table" to increase her base offense by ten levels bringing her to an adjusted offense level of 16. Cho's involvement is substantially less than ringleader Chui's and others in this offense yet she is held responsible for the entire loss amount. The Court should take into consideration Cho's lesser role and profit in this scheme and allow for a departure from the 10 level increase, particularly where she was the pregnant girlfriend of Chiu and commensurately vulnerable and subject to his control and direction.

### B. In Determining Cho's Final Sentence, the Court Should Take Into Consideration Cho's Full Cooperation with the Government.

Cho entered into a Proffer Agreement with the United States and agreed to provide truthful information as requested by the Government for the purpose of a potential downward departure pursuant to U.S.S.G. § 5K 1.1.

On July 9 and 24, 2003, Cho met with representatives of the Government and provided details about her involvement as well as generally describing how the criminal scheme was operated.

Notwithstanding Cho providing valuable information against the father of her child to the Government at a great emotional cost and a potential great personal loss, the Government, in its discretion, chose not to move for a downward, "substantial assistance" departure, apparently not needing her testimony.  Nevertheless, the Court should take into consideration Cho's cooperation and factor this into the sentence calculated under the post-<u>Booker</u> model.

      **C.**      **In Determining Cho's Sentence, the Court Should Consider Sentencing Parity**

Specifically, a goal of 18 U.S.C. § 3553(a )(6) is to avoid unwarranted sentencing disparity of similarly situated defendants.  It is important to note that co-defendant Tony Cho, whose role can arguably be considered to be more central to this scheme than Cho's as he was directly involved through his position at the Bank in facilitating the fraud, was only held responsible for $74,200, thus placing him at an adjusted offense level of 13. *See* PSR ¶ 9-12.  Tony Cho received the equivalent of a departure from his guideline level and received two years probation granted by the Court, Zobel, J.  It is respectfully suggested that Cho in no event should receive a greater sentence than co-defendant Tony Cho, a professional whose banking position was the lynchpin of the criminal enterprise's success.

      **D.**      **In Determining Cho's Sentence, the Court Should Consider Her Background**

6

The Court must take into account "the history and characteristics" of Cho. *See* 18 U.S.C. § 3553(a)(2)(B) & (C). In making this determination, Cho urges the Court to review paragraphs 34-46 of the PSR outlining Cho's family background. She came to the United States from China with her parents at the age of thirteen and she has led a law abiding, hard-working life. Her involvement in this scheme can be viewed as aberrant behavior which was facilitated by her boyfriend directing her at a time when she was pregnant and therefore more vulnerable and susceptible to his control. A sentence of probation would reflect the nature, circumstances and seriousness of this offense considering Cho's role while also affording adequate deterrence. *See* 18 U.S.C. § 3553(a)(1), (2)(A) and (B).

> E. **In Determining Cho's Sentence, the Court Should Take Into Consideration the Substantial Hardship that Would be Caused to Jayden Cho, Mrs. Cho's 20 Month Old Son for Whom She is the Sole Provider**

Cho lives at her parents' home in Quincy, MA. Her Mother helps care for Jayden Cho while Jie Ling works two full time jobs. Cho no longer has contact with the father of her child, co-defendant Chui, who is imprisoned. *See* PSR ¶ 41-46. A period of incarceration however short, would create a substantial hardship on Cho's child, in that Cho would lose both jobs and no longer be able to provide for the child, whether financially, physically or emotionally. Her parents would be able to care for the child in a limited fashion in her absence, but the loss of employment and separation from the child would create a substantial hardship that would carry over well after her release.

**CONCLUSION**

In sum, the language of § 3553(a) suggests a sentence of probation/home confinement would constitute the most appropriate balance of all of the competing interests herein. It is respectfully requested that this Honorable Court impose same, including any conditions it deems appropriate.

Respectfully Submitted,

*Frank Fernandez*
Frank Fernandez.
Jeffrey Denner
Denner O'Malley LLP
Four Longfellow Place, 35th Floor
Boston, MA 02114
617-227-2800

CERTIFICATE OF SERVICE

I, Frank Fernandez, certify that I have served a true copy of the within Sentencing Memorandum upon John Mitchell, Assistant United States Attorney, by hand this 24th day of February, 2005.

*Frank Fernandez*
Frank Fernandez